UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN AUSTIN MILLS,

        Petitioner,

                                            Case No. 1:03-cv-626

v.

                                            Hon. Wendell A. Miles

JOHN CASON,

        Respondent.
_____/

OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION

        On May 31, 2006, United States Magistrate Judge Hugh W. Brenneman, Jr., issued a Report and Recommendation ("R & R") recommending that Petitioner's application for a writ of habeas corpus be denied as his claims are either without merit or procedurally defaulted. Petitioner has filed timely objections to the R&R.  The Court, having reviewed the R & R,  the relevant portions of the file in this matter, and Petitioner's objections, agrees with the conclusions contained in the R & R.

        Petitioner and two co-defendants were charged with robbing, assaulting and raping four women at the King's Garden Health Spa in Battle Creek, Michigan, and further, of setting the building on fire before leaving the scene.  Two of the four women died of their injuries.  Petitioner was convicted on October 15, 1999.  He was sentenced to life imprisonment for each count of assault with intent to rob, and lesser concurrent terms of imprisonment for the remaining counts.  As the magistrate judge thoroughly summarized the testimony presented at trial in the R&R, the Court need not repeat it in its entirety.  Petitioner raises nine grounds for

relief, which the Court will discuss in turn.

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, No 05-1167, 2006 WL 639150 (U.S. June 12, 2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This Court also may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly

established federal law.[1] *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if: (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result, (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case, or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

---

[1] Although only Supreme Court case law is relevant under the AEDPA in deciding what federal law is clearly established, lower federal court decisions may be used to the extent the court has already reviewed and interpreted the relevant Supreme Court law. Hill v. Hofbauer, 337 F.3d 706, 716 (6th Cir. 2003).

## Discussion

### A. Grounds VII and VIII - procedurally defaulted claims

Petitioner claims his due process rights were violated when the trial court: (a) allowed evidence of his flight [ground VII], and (b) failed to instruct the jury that their verdict must be unanimous with regard to each offense [ground VIII]. The magistrate judge concluded that these claims were procedurally defaulted and Petitioner failed to show cause for the default. The court may review a procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice as a result of the alleged constitutional violation. Coleman v. Thompson, 501 U.S. 722, 750 (1991), or actual innocence. Bousley v. United States, 523 U.S. 614, 622-23 (1998). Petitioner did not object to the Magistrate Judge's conclusion that his claims were procedurally defaulted. He argues that his counsel failed to object to the testimony regarding flight because his attorney was "ambushed" and "taken completely by surprise" by the witness' testimony. Although counsel might not have anticipated the testimony, Petitioner's argument does not explain why he failed to object once the testimony had been presented. Thus, the alleged "ambush" does not demonstrate cause for the default.

As to the alleged jury instruction error, Petitioner argues that it is the trial court's duty to properly instruct the jury, and that duty cannot be delegated to counsel.[2] He cites Johnson v. Corbet, 377 N.W. 2d 713, 423 Mich. 304 (1985) as support for this argument. In Johnson, the defendant specifically requested that the trial court give a particular standard jury instruction, which the court declined to do. The Michigan Supreme Court stated that it was the

---

[2]The trial court instructed that "[a] verdict in a criminal case must be unanimous. That means in order to return a verdict it is necessary that each of you agrees on that verdict."

trial court's "duty to determine the applicability of the particular [jury instruction] requested by counsel," id. at 723, a duty which "cannot be delegated to counsel." The statement in Johnson merely means that if a jury instruction is requested by counsel, it is the court's duty to determine if the instruction is applicable. Moreover, even if Petitioner's interpretation of Johnson was correct, it is a state court case announcing state law. A prisoner is entitled to federal habeas corpus relief only if the state court's decision in the petitioner's case was contrary to clearly established federal law as announced by the Supreme Court of the United States. Accordingly, the Court finds that the magistrate judge's conclusion that the claims were procedurally defaulted is correct.

### B. Ground I

Petitioner claims he was denied a fair trial when the trial court denied his motion for a change of venue. The magistrate judge concluded that neither the media coverage nor the jury voir dire revealed a climate of hostility in the community that rendered the jurors unable to decide Petitioner's case fairly and impartially. Petitioner argues that the extensive media coverage of the brutal crimes at the Kings Garden Health Spa, and Petitioner's flight and subsequent capture in Tennessee give rise to a presumption of prejudice so great that the jurors' claims of impartiality during voir dire could not be believed.

The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to an impartial jury. Morgan v. Illinois, 504 U.S. 719 (1992). Prejudice can be presumed where the influence of the news media "pervaded the proceedings." Murphy v. Florida, 421 U.S. 794, 798-99 (1975). Pretrial publicity does not inevitably lead to an unfair trial. A qualified juror need not be "totally ignorant of the facts and issues involved. It is

sufficient if the juror can lay aside his impression or opinion and render a verdict based on evidence presented in court." Id. at 799-800.  Petitioner has presented no evidence which demonstrates that the pretrial media coverage "inflamed public sentiment," Shepherd v. Florida, 341 U.S. 50, 52-53 (1951), or created a "wave of public passion that would have made a fair trial unlikely by the jury that was empaneled as a whole." Yount v. Patton, 467 U.S. 1025, 1040 (1984).  Nothing indicates that Petitioner's trial was "conducted in a circus atmosphere." Estes v. Texas, 81 U.S. 532 (1965); and see Sheppard v. Maxwell, 384 U.S. 333, 358 (1966) (finding that "inherently prejudicial publicity saturated the community," and a "carnival atmosphere" reigned at trial);  Irvin v. Dowd, 366 U.S. 717, 726 (1961) ("[C]ontinued adverse publicity caused a sustained excitement and fostered a strong prejudice" among the people of the county).

  Petitioner speculates that the jury venire could not possibly have been unaffected by pretrial publicity.  However, he acknowledges that half of the jury members had not read or heard anything about the case, and the majority of the other jurors could not remember specific facts or details of the crime, or Petitioner's involvement.  Petitioner attempts to equate the pretrial publicity in his case to that found in Nevers v. Killinger, 169 F.3d 352 (6th Cir. 1999). The cases, however, are not comparable.  In Nevers, a white police officer was accused of shooting a unarmed, African-American man in Detroit, Michigan.  Both the police chief and Detroit's mayor made prejudicial statements to the press, including a statement by the mayor on national television that the victim was "literally murdered by police."  The media reported that the city quickly settled a civil suit by the victim's family for over five million dollars, and that the police department was preparing for a riot in the event of acquittal.  In addition, it was reported that the police officer had the reputation of being a violent rogue police officer who

6

often used force and intimidation; he had been involved in previous shooting deaths of other suspects; and many brutality complaints had been filed against him.  Other articles discussed the police officer's involvement in STRESS (Stop the Robberies Enjoy Safe Streets) which was a controversial undercover unit that allegedly harassed young, African-American men, engaged in brutality and allegedly was responsible for the deaths of twenty people before it was disbanded.  Id. at , 366, 370 n.21.  Significantly, at least one juror's affidavit stated that the STRESS affidavit "set the tone" for the jury deliberations.  Id. at 373.  In the present case, the pretrial publicity was less extensive, less inflammatory, and any personal information regarding Petitioner was far less disparaging.

### C.  Ground II

As his second ground for relief, Petitioner contends that his due process rights were violated when the trial court denied his motion to suppress the in-court identification by one of the victims, Yun Hui Catalfamo.  Two days after the crime, Ms. Catalfamo was not able to describe the perpetrators.  The following day, she viewed six photographs and identified three possible individuals, including Petitioner.  During the trial of Petitioner's co-defendant, Chavez Hall, the prosecution displayed photographs of all three defendants.  Ms. Catalfamo pointed to relevant photographs during her testimony.  Petitioner moved to suppress Ms. Catalfamo's in-court identification, and the trial court denied the motion.

A pretrial identification violates a defendant's due process rights when the pretrial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Ledbetter v. Edwards, 35 F.3d 1062, 1071 (6th Cir. 1994), citing Thigpen v. Cory, 804 F.2d 895 (6th Cir. 1985) (quoting Simmons v. United States,

390 U.S. 377, 384 (1968). First, the court must determine if the procedure was unduly suggestive. If it was unduly suggestive, the court must next evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable. Ledbetter, at 1071 (citations omitted).[3] In its evaluation, the court must consider the totality of the circumstances, including: (1) the opportunity of the witness to view the defendant at the initial observation, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the defendant, (4) the level of certainty shown by the witness at the pretrial identification, and (5) the length of time between the initial observation and the identification. Manson v. Braithwaite, 432 U.S. 98, 114 (1977); Neil v. Biggers, 409 U.S. 188 (1972).

The Michigan Court of Appeals found that the pretrial identification was reliable. This Court must presume that factual determinations made by a state court are correct unless the habeas petitioner has rebutted them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The magistrate judge assumed that the photograph identification at Chavez Hall's trial was impermissibly suggestive, but further concluded that Petitioner had not rebutted the presumption of correctness by clear and convincing evidence. Even assuming the identification was not reliable, it is subject to a harmless error analysis. United States v. Wade, 388 U.S. 218, 242 (1967). Most errors do not automatically render a trial unfair and thus, are harmless. See Arizona v. Fulminate, 499 U.S. 279, 306 (1991); Rose v. Clark, 478 U.S. 570, 579 (1986). The habeas petitioner has the burden of demonstrating that the trial error resulted in "actual prejudice." United States v. Lane, 474 U.S. 438, 449 (1986).

Petitioner raises objections to the reliability of the identification, but makes no

---

[3]

argument regarding the magistrate's conclusion that admission of the pretrial identification was harmless error. Accordingly, Petitioner fails to satisfy his burden of establishing "actual prejudice."

### D. Ground III

Petitioner claims his due process rights were violated when the trial court denied his: (a) motion for requested funds to retain a pharmacology or toxicology expert to testify regarding the effect of crack cocaine on a person's ability to recall events, and (b) motion for discovery of any disciplinary action taken against the prosecutor's scientific expert witnesses. The magistrate judge concluded that the failure to provide funds for a pharmacology or toxicology expert was not contrary to clearly established Supreme Court precedent. The magistrate judge discussed Ake v. Oklahoma, 470 U.S. 68 (1985), where the Supreme Court held that an indigent defendant has a right to an appointed psychiatrist to assist him in his defense if his sanity at the time of the offense would be a significant factor at trial. Id. at 83. The Supreme Court has not extended its holding in Ake to non-psychiatric assistance or experts. Petitioner seizes upon the magistrate judge's statement that it "is an open question whether the holding in Ake applies to requests for non-psychiatric experts," to argue that whether denying funds for an expert witness violates due process should be determined on a case by case basis. However, to prevail on this claim, Petitioner must show that the state court's decision was contrary to, or an unreasonable application of, "clearly established federal law" as announced by the Supreme Court of the United States. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. Slagle v. Bagley, __ F.3d __, No. 04-3490, 2006 WL 2252513, at *8 (6th Cir. Aug. 8, 2006), citing Mitchell v. Esparza, 540

9

U.S. 12, 17 (2003). The Supreme Court simply has not clearly established a right to an expert non-psychiatric witness.

The magistrate judge further concluded that the state court did not violate clearly established federal law by denying Petitioner's request for discovery of any disciplinary action that might have been taken against one or more of the prosecution's expert witnesses. Petitioner contends that the magistrate judge incorrectly concluded that Brady v. Maryland, 373 U.S. 83 (1963) does not apply. It is well established that there "is no general constitutional right to discovery in a criminal case." Weatherford v. Bursey, 429 U.S. 545, 559 (1977). However, under the holding in Brady, the prosecution is required to disclose evidence that is both favorable to the accused and "material either to guilt or to punishment." Id. at 87. A Brady violation occurs where the defendant discovers after trial that the prosecution had exculpatory, material information which it failed to disclose. United States v. Agurs, 427 U.S. 97, 103 (1976). Impeachment evidence as well as exculpatory evidence falls within the Brady rule. United States v. Bagley, 473 U.S. 667, 676 (1985), citing Giglio v. United States, 405 U.S. 150, 154 (1972) (when the "reliability of a given witness may be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls with the Brady rule). Even assuming that disciplinary action against one of the prosecution's witnesses would qualify as impeachment evidence, Petitioner has not shown, argued, or implied that the prosecutor had pre-trial knowledge of that information. Accordingly, the general rule set forth in Weatherford, rather than Brady, governs the Petitioner's claim.

### E.  Ground IV

Petitioner claims that his due process rights were violated when the trial court

allowed Angela Chase to testify that sometime after the crime, Petitioner stated he wanted to get a teardrop tattoo, which Ms. Chase believed meant that Petitioner had killed someone. Ms. Chase was the girlfriend of one of Petitioner's co-defendants and had been with the three defendants on the night of the crime. She apparently waited in the automobile while the defendants were in King's Garden. She was granted immunity in exchange for her testimony against the three defendants.

State court evidentiary rulings do not violate due process unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental. Montana v. Egelhoff, 518 U.S. 37, 43 (1996). Petitioner argues that the probative value of the evidence was outweighed by its prejudicial effect. The Court agrees with the magistrate judge's conclusion that Ms. Chase's testimony did not deny Petitioner a fundamentally fair trial. Petitioner had an opportunity to cross examine Ms. Chase. During cross-examination she conceded that a teardrop tattoo could indicate that a person had spent time in jail or be a gang insignia. The jury heard all of Ms. Chase's testimony. Based on her total testimony, the jury was in a position to fairly accord the challenged statement its proper weight.

### F. Ground V

As his fifth ground for relief, Petitioner claims that his due process rights were violated when a photographic line-up was conducted without counsel present. Yun Hui Catalfamo, one of the surviving victims of the crime at King's Garden Health Spa, was presented with a photographic lineup consisting of six photographs. Catalfamo eliminated three of pictured individuals as involved in the crime. The three remaining possible perpetrators included Petitioner. Under established Supreme Court precedent, there is no federal constitutional right to be represented

by counsel at a photographic lineup. United States v. Ash, 413 U.S. 300, 321 (1973). Petitioner argues that the identification procedures set forth in People v. Anderson, 205 NW 2d 461, 389 Mich. 155 (1973), were clearly violated. Even if Petitioner's assertion is correct, a claim based solely on a violation of state law is not cognizable in a habeas corpus action. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Gryger v. Burke, 334 U.S. 728, 731 (1948) (explaining that a "mere error of state law" is not a denial of due process). Therefore, the magistrate judge's conclusion that this claim has no merit is correct.

### G. Grounds VI and IX

For his sixth and ninth grounds for relief, Petitioner claims that his due process rights were violated when the hearsay statements of a co-defendant were admitted. At Petitioner's trial, a detective testified that after he interviewed Petitioner's co-defendant Chavez Hall, he and Mr. Hall went to a wooded area in Battle Creek where he located Petitioner's tennis shoe. The Michigan Court of Appeals found that the testimony was properly admitted for the purpose of explaining why the detective went to a particular location to look for evidence. The magistrate judge found that the state court's decision was not an unreasonable application of federal law, and even if it was, the error was harmless.

Petitioner argues that the decision was an unreasonable application of Bruton v. United States, 391 U.S. 123 (1968). In Bruton, two codefendants, Evans and Bruton, were tried jointly and convicted of armed postal robbery. A postal inspector testified that Evans had orally

confessed that he and Bruton had committed the crime. The Supreme Court held that a defendant is deprived of his Sixth Amendment right of confrontation when a non-testifying co-defendant's facially incriminating confession is introduced at their joint trial, even when the jury is instructed to consider the statement only against the co-defendant. Id.. at 135-36.  In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court noted that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at n.9.  For example, in Tennessee v. Street, 471 U.S. 409 (1985), the Supreme Court ruled that the admission of an accomplice's out of court confession was not error because the accomplice's statement was admitted for the nonhearsay purpose of rebutting defendant's testimony. Id. at 414. The Supreme Court reasoned that the Confrontation Clause's fundamental role in protecting the right of cross-examination was satisfied by the sheriff's presence on the stand.  If defendant's attorney doubted that the accomplice's confession was accurately recounted, he was free to cross-examine the sheriff.  Id. at 414.  Petitioner, likewise, had the opportunity to cross-examine the detective in this case.  Considering Crawford and Street, the state court's decision was not an unreasonable application of federal law.

## **Conclusion**

For the reasons discussed above, the Court finds that the magistrate judge's findings, conclusions and recommendations are correct.  Accordingly, the Court overrules the Plaintiff's objections (docket # 43 ), adopts the magistrate judge's report and recommendation (docket #39  ) in its entirety, and DENIES the petition for writ of habeas corpus.

So ordered this 28th day of August, 2006.

/s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge